

**Littler Mendelson, P.C.**
One Newark Center
8th Floor
Newark, NJ  07102

Peter Ajalat and Russ McEwan
Office Managing Shareholders

Jillian L. Szymonifka
973.848.4728 direct
973.848.4700 main
973.741.2313 fax
jszymonifka@littler.com

June 28, 2018

**VIA ECF**

Honorable Lois H. Goodman, U.S.M.J.
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 7E
Trenton, New Jersey  08608

Re:   Josephine Baccay v. Heartland Payment Systems LLC et al.
      Civil Action No. 3:17-cv-7779-FLW-LHG

Dear Magistrate Judge Goodman:

The parties to the above-referenced case hereby provide this joint letter regarding a discovery dispute that is ripe for this Court to address following an unsuccessful "meet and confer" on the following dispute earlier this week. The dispute involves whether a stay of discovery is warranted in light of Defendants' Heartland Payment Systems LLC ("HPS") and Heartland Payment Solutions, Inc. ("Solutions") (together, "Defendants") recently filed motion for summary judgment which, if granted, will end this case. *See* Dkt. 36.  The parties' positions are set forth below.

### Defendants' Position

Defendants respectfully ask this Court to exercise its "broad discretion" to "stay discovery pending a decision on [their] dispositive motion." *Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (Schneider, M.J.). Because Defendants' summary judgment motion is set for July 16, 2018—less than **one month** from today—the stay sought by this letter motion will be brief.[1]

During her deposition, Plaintiff Josephine Baccay testified that (1) the claims in her Complaint lack merit; (2) she cannot be sure whether several key factual allegations in her Complaint are even true; and (3) even if those factual allegations were true, she suffered no cognizable harm. For example:

---

[1] During a conferral call, Baccay's counsel indicated that she intends to extend the deadline for her response to Defendants' motion for summary judgment. But Baccay can hardly complain about a delay that is unnecessary and caused by her own actions. And if any deadlines are extended, the stay will extend only a few additional weeks.

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 2

- Baccay alleges that Defendant Solutions violated the law by giving her a deficient disclosure and authorization form. But at her deposition she admitted she never applied for a job with Solutions, never received any forms from Solutions, and never worked for Solutions. *See infra* at 3.

- Baccay alleges that the forms she received from HPS violated the law because they contained liability releases. Dkt. 1-3 ¶¶ 30, 32–34, 49. But at her deposition, she admitted that HPS' disclosure form does not contain a release. *See infra* at 4-5.

- Baccay alleges that Defendants violated the FCRA by failing to inform her that she could request a summary of her rights under that Act. *See* Dkt. 1-3 ¶ 37. But it is undisputed that HPS in fact informed her of that right, and also gave her the summary of rights form. *See infra* at 4-5.

Despite these case-ending admissions, Baccay has not dismissed this action. On the contrary, she has served extraordinarily broad and burdensome discovery requests seeking vast amounts of personal and confidential information regarding **thousands** of persons who have sought positions at any of HPS' **nationwide** facilities over the past **six years**. Notably, Baccay's discovery demands include seeking tens of thousands of pages of records containing personal information regarding the thousands of individuals who applied for jobs with HPS since 2010, including such information as their names, addresses, **social security numbers**, **bank account numbers**, work history, driving records and criminal records—information that absent class members presumably do not want released, particularly to an individual convicted of welfare fraud and who has several other judgments against her.

As described in more detail below, the Court should stay discovery pending a decision on Defendants' motion for summary judgment, which is due to be granted. *See Abney v. Basial*, 2017 WL 4472758, at *7 (M.D. Pa. Oct. 6, 2017) ("[I]f a dispositive motion is pending—as is the case here—courts will consider whether the pending motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law.").

<u>The Court invited Defendants to file an early dispositive motion</u>

During the initial scheduling conference, Defendants informed this Court that Baccay's counsel are serial filers of putative class actions: they cut and paste allegations against numerous corporate defendants without ensuring that a factual basis actually supports their claims. That improper litigation strategy is apparent here: Baccay sued Defendants for obtaining credit reports without making the proper disclosures, Dkt. 1-3 ¶¶ 66–72, but **Defendants do not obtain credit reports on any applicants or employees**. *See* Dkt. 36-1 at 25. Similarly, Baccay claims that Defendants' background check disclosure form is improper because it contains a release. But **Defendants' disclosure form contains no release**. *See id.* at 27.

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 3

After the May 9 scheduling conference, Defendants promptly deposed Baccay on June 1. Her deposition testimony makes clear that her claims are frivolous, that her Complaint should be dismissed, that judgment should be granted to Defendants, and that sanctions are warranted.

<u>Baccay sued an entity that she admits she had no relationship with</u>

Baccay alleges that Defendants obtained credit and background reports on her when she applied for employment, but did so without first giving her the disclosures required under the Fair Credit Reporting Act and analogous California laws. *See* Dkt. 1-3 ¶ 2. Baccay brought these claims against two separate corporate entities: HPS and Solutions. But in her deposition, Baccay admitted that she never applied for a job with Solutions; that Solutions never employed her; and that Solutions played no role in obtaining any background or credit check on her. Dkt. 36-4 at 10 (June 1, 2018 Deposition of Plaintiff Josephine Baccay at 29).[2]  Simply put, Baccay has no factual or legal basis to sue Solutions.

<u>Baccay's claims against HPS have no factual basis</u>

Baccay's claims against HPS fare no better. Her Complaint alleges that HPS violated California's Consumer Credit Reporting Agencies Act by failing to give certain disclosures before obtaining credit reports. Dkt. 1-3 ¶¶ 66-72. But as shown in Defendants' motion for summary judgment, **HPS does not conduct credit checks on its applicants or employees**. *See* Dkt. 36-1 at 25. It is thus not surprising that at her deposition Baccay admitted that she has no evidence to support this claim:

> Q. Do you have any facts or evidence as you sit here today and are testifying under oath that Heartland prepared a credit report about you or caused somebody else to prepare a credit report about you?
> A. No.

Dkt. 36-4 at 15–16 (Baccay Dep. at 41–42).

Baccay's Complaint also alleges that HPS violated the FCRA and California's Investigative Consumer Reporting Agencies Act because its disclosure forms included a liability release. Dkt. 1-3 ¶¶ 30, 32–34, 49. But at her deposition, Baccay flatly admitted that HPS' disclosure form does not contain a release:

> Q. Are you aware of anywhere on Defendant's Exhibit 10 [HPS' disclosure form] where Heartland is requiring you to release any claims against it or anybody else?

---

[2] Baccay's lack of factual basis for suing Solutions is discussed in Defendants' motion for summary judgment. *See* Dkt. 36-1 at 24–25.

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 4

> A. Not that I could see.

Dkt. 36-4 at 35–36 (Baccay Dep. at 104–05) (objection omitted).[3]

Baccay also alleges that Defendants violated the FCRA by failing to inform her that she could request a summary of her rights under the FCRA. Dkt. 1-3 ¶ 37. This allegation is also false. The disclosure form Baccay received specifically informs her of this right. It reads: "You have the right . . . to request . . . a Summary of Your Rights Under the Fair Credit Reporting Act." Dkt. 36-13 at 2 (Exhibit J to Defendants' Motion for Summary Judgment). Even more incredibly, **_Defendants actually gave Baccay the summary of rights form—the specific form her Complaint insists Defendants did not tell her she had the right to receive_**. *See id.* at 6–8.[4]

For the reasons discussed above, Baccay's deposition testimony confirms that her factual allegations are false. But even if they were true, her Complaint is still meritless because she admitted that she suffered no cognizable harm:

> Q. Can you name for me a single job you lost as a result of Heartland conducting or causing to be conducted a background check?
> A. No.
> Q. And you can't identify for me any money you lost as a result of Heartland conducting or causing to be conducted a background check. Correct?
> A. No.[5]
> Q. I'm correct. Right?
> A. Correct.
> Q. And *you can't identify for me any other harm you suffered* as a result of Heartland conducting or causing to be conducted a background check. Correct?
> A. Not that I know of.

Dkt. 36-4 at 21–22 (Baccay Dep. at 78–79) (emphasis added).

This testimony establishes that she has suffered no cognizable injury, and has no Article III standing to bring her FCRA claims. *See* Dkt. 36-1 at 28–39; *see also id.* at 39–41.

---

[3] As for Solutions, Baccay admitted that that entity did not give her any disclosure form at all. *See* Dkt. 36-4 at 10 (Baccay Dep. at 29).

[4] *See also* Dkt. 36-1 at 26 (discussing this same point).

[5] This admission is fatal to Baccay's California Unfair Competition Law claim. *See* CAL. BUS. PROF. CODE § 17204 (private party may bring UCL action only if she has "lost money or property as a result of the unfair competition").

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 5

<u>Baccay seeks wide-ranging discovery despite admitting that her claims lack merit</u>

Despite making admissions, Baccay presses forward with this lawsuit by serving overbroad and wide-ranging discovery on Defendants. Her discovery seeks, among other things, the personally identifying information of every one of the ***thousands*** of people who applied for a job with Defendants in the past ***six years***.

For example, Baccay has requested "[a]ny and all DOCUMENTS between YOU, PLAINTIFF and/or CLASS MEMBERS in relation to CONSUMER REPORTS DURING THE RELEVANT TIME PERIOD." *See* Plaintiff's First Request for Production of Documents to Defendant Heartland Payment Systems LLC (served May 24, 2018), Request No. 7 (attached to this letter as Exhibit B). Using Baccay's own definitions of the capitalized terms, this request would require Defendants to produce, for each of its thousands of job applicants, the background check that Defendants performed (among many other things).

Defendants should not be forced to incur the substantial cost associated with locating, ingesting, reviewing, and producing this mass of personally identifying information—especially since Baccay has herself admitted that her claims are meritless. Not to mention that this personally identifying information is wholly irrelevant to Baccay's claims. Her claims concern Defendants' authorization and disclosure forms, not the contents of background checks.

Nor should Defendants' job applicants and employees be forced to have their personally identifying information—contact information, social security numbers, driving records, criminal histories, etc.—disclosed to Baccay, a complete stranger with a criminal background. *See* Dkt. 36-1 at 14–15 (Baccay has been convicted of welfare fraud).

As another example, Baccay has requested "All DOCUMENTS interviewees are required to submit to YOU." *See* Ex. B, Request No. 13. Again, this request seeks irrelevant information and is overly broad and extremely burdensome. Defendants would have to comb through thousands of personnel files, one by one, to locate potentially responsive documents. And this information is indisputably irrelevant: the documents that interviewees provide ***to Defendants*** have no bearing on Baccay's claims, which concern disclosure forms that Defendants provide ***to job applicants***. Defendants should not be forced to incur the time and expense of responding to this irrelevant, overbroad, and harassing discovery when Baccay's claims lack merit and will soon be dismissed. Nor, again, should Defendants' job applicants and employees have their personally identifying information disclosed to Baccay. Any review of Baccay's discovery (attached) reveals numerous other requests that are extremely overbroad and would require Defendants to incur substantial time and expense to respond to.

<u>The Court has discretion to stay discovery</u>

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 6

"Magistrate Judges have broad discretion to manage their docket[s] and to decide discovery issues, including whether to stay discovery pending decision on a dispositive motion." *Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (Schneider, M.J.). The authority to stay discovery pending a dispositive motion is based on a "simple, fundamental truth: Parties who file motions which may present potentially meritorious and complete legal defenses to civil actions should not be put to the time, expense and burden of factual discovery until after these claimed legal defenses are addressed by the court." *Brown v. Mace-Liebson*, 2015 WL 5165499, at *2 (M.D. Pa. Sept. 3, 2015).

In considering whether to stay discovery, courts balance the parties' "competing interests and the court's inherent interest in promoting 'fair and efficient adjudication' of the claims." *Galarza v. Whittle-Kinard*, 2017 WL 2198182, at *1 (D.N.J. May 18, 2017). The Court should consider three factors to determine whether good cause exists for a stay (1) whether a stay would prejudice Baccay; (2) whether allowing discovery to proceed would prejudice Defendants; and (3) whether Defendants' pending motion for summary judgment is likely to succeed. *See, e.g., Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277, at *3 (S.D.N.Y. Mar. 7, 1996); *Galarza*, 2017 WL 2198182, at *1–2; *Brown*, 2015 WL 5165499, at *2; *Actelion Pharm. Ltd. v. Apotex Inc.*, 2013 WL 5524078, at *5 (D.N.J. Sept. 6, 2013). All three favor a stay.

*First*, Baccay would not be prejudiced by a stay of discovery. Defendants are seeking only a brief stay. The motion return date is July 16, less than one month from today. Thus, the Court should resolve Defendants' motion in a relatively short period of time. And in any event, no matter the length of the stay, Baccay's own testimony has affirmatively undermined the factual and legal contentions in her Complaint. There is no discovery she could obtain from Defendants that would contradict her own unequivocal deposition testimony.

*Second*, as discussed above, Baccay's discovery requests are extremely broad and burdensome; indeed, they seek information that is plainly irrelevant to her claims. *See Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (characterizing discovery as "extensive" when it "ask[ed] for information covering a span of more than five years"). And the Court is justified in granting a stay especially when burdensome discovery like Baccay's "will be totally unnecessary if [Defendants]' motion . . . is granted." *Id.*; *see also Smith v. Spencer*, 2018 WL 1050080, at *4 (M.D. Pa. Feb. 26, 2018) ("further discovery should be briefly stayed at this time until after the court resolves the pending summary judgment motions").

*Third*, Defendants' dispositive summary judgment motion is meritorious and due to be granted. As explained in great detail in that motion, the undisputed facts—including Baccay's own testimony—completely undermine both the factual and legal bases of her Complaint.

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 7

**Plaintiff's Position**

Plaintiff respectfully requests that this Court to deny Defendants' request for a stay pending a decision on their recently filed motion for summary judgment, which also should be denied.

<u>Defendants Seek a Stay on Discovery in Bad Faith</u>

Defendants served discovery consisting of Request for Production of Documents and Interrogatories which were due on June 23, 2018. Moreover, on June 1, 2018, Plaintiff flew to New Jersey and appeared for her deposition. Plaintiff also served her own set of written discovery consisting of Request for Production of Documents and Interrogatories which were due on June 26, 2018.

Shortly after serving her written responses on June 23, 2018 (and also serving courtesy electronic copies by email), Defendants responded by stating they would be seeking a stay on all further discovery. On June 25, 2018, Defendants served responses consisting solely of objections with no substantive responses.

Defendants' conduct thus far is a form of gamesmanship in that they somehow believe that they should be entitled to obtain discovery from Plaintiff but that Plaintiff should not be entitled to discovery from Defendants. Moreover, Defendants have filed a motion for summary judgment seeking to dismiss Plaintiff's entire complaint. Plaintiff should be afforded an opportunity to conduct reasonable discovery in order to refute the claims asserted in Defendants' motion.

<u>Baccay Sued Legal Entities That She Believed Were Proper Parties</u>

Defendants' broadly assert that Plaintiff has no factual or legal basis to sue Heartland Payment Solutions, Inc. ("HPSI") based solely on her deposition testimony. As more fully explained below, HPSI is a proper party because Defendants' own legal documents do not make clear the legal entity under which they are doing business. For example, on the Notice Regarding Background Investigation, defendant is referred to as "Heartland Payment Systems Inc" – a legal entity that did not exist (and not authorized to do business) in California at the time Plaintiff was hired.[6] Upon hire, Plaintiff was presented with:

- Sales Employment Agreement purportedly between her and Heartland Payment Systems, Inc.
- Relationship Manager Jump Start Program purported between her and Heartland Payment Systems, Inc.

---

[6] The California Secretary of State has a record of Heartland Payment Systems, Inc. that was originally registered on August 15, 2001. However, the registration was surrendered on May 19, 2016.

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 8

- Acceptance and Acknowledgment of Expected Business Policies and Practices purportedly between her and Heartland Payment Systems, Inc.
- Heartland Payment Systems, Inc. Conflict of Interest Certification

All of these material legal documents reference a business entity that did not exist at the time they were presented to Plaintiff – and to this day, still does not exist in California. Further lending to confusion was the direct deposit statement Plaintiff received indicating that she was being paid by Heartland Payment Systems LLC.

After conducting a diligent search with the California Secretary of State, Plaintiff discovered that Heartland Payment Systems, Inc. was surrendered and that a new entity was formed with a similar name Heartland Payment Solutions, Inc. Under these circumstances, and not knowing which one was the proper legal entity as Defendants' own legal documents do not make clear, Plaintiff was justified in bringing this action against both Defendants.

Baccay's Claims Were Based on the Express Language in the Notice

Defendants complain that Plaintiff "cut and paste allegations against numerous corporate defendants without ensuring that a factual basis actually supports their claims." Not so, as Plaintiff was justified in relying on the express language in the Notice that a consumer credit report would be obtained by Defendants.

Plaintiff was presented with a Notice Regarding Background Investigation Pursuant to California Law that which expressly state that a credit report may be obtained:

> "Employer (the "Company") intends to obtain information about you from an investigative consumer reporting agency and/or a consumer credit reporting agency for employment purposes. Thus, you can expect to be the subject of "investigative consumer reports" and "consumer credit report" obtained for employment purposes."

In most cases, an applicant that is the subject of a consumer credit report is not always informed that a credit report is obtained about them. Therefore, despite Plaintiff's deposition testimony that she does not have any facts or evidence that a credit check was obtained from Defendants, that alone would not have been dispositive as to whether one was in fact obtained by Defendants.

Therefore, Defendants attempt to make it appear that Plaintiff's counsel regularly file class action lawsuits without ensuring that a factual basis actually exists to support them is entirely false.

Defendants' Background Check Disclosure Form Does Not Consist Solely of the Disclosure

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 9

It is not surprising that Defendants' would attempt to obfuscate the underlying issue that is before this Court by calling out specific allegations in the complaint, that while they had a reasonable basis at the time of filing, turned out not to have a factual basis after conducting some discovery. Specifically, the issue that is before this Court is that Defendants' background disclosure form is not clear and conspicuous as required by 15 U.S.C. section 1681b(b)(2)(A)(i). While the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i) must be clear and conspicuous, it is fair to recognize that FCRA does not specially define the term "clear and conspicuous."

Perhaps owing to the relative clarity of the words "clear and conspicuous," there is surprisingly little case law interpreting the term as used in 15 U.S.C. § 1681b. The Court of Appeals for the Seventh Circuit said "it is appropriate to draw upon the wealth of [Uniform Commercial Code ("UCC")] and [Truth in Lending Act ("TILA")] case law in determining the meaning of 'clear and conspicuous' under the FCRA." *See Cole v. U.S. Capital*, 389 F.3d 719, 730 (7th Cir. 2004); *see also Stevenson v. TRW Inc.*, 987 F.2d 288, 295-96 (5th Cir. 1993) (interpreting "clear and conspicuous" language used in section 1681i(d) of the FCRA with reference to TILA and UCC cases). The Third Circuit has interpreted a "clear and conspicuous" disclosure to mean, in the context of the TILA, "in a reasonably understandable form and readily noticeable to the consumer." *See Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002) (citing 15 U.S.C. § 1632(a)). The UCC defines conspicuous as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." U.C.C. § 1-201(b)(10).

Other courts have regarded a FCRA disclosure as being nonconspicuous where it was printed ***in small type***, on the back of a document, ***when it is the same size and typeface as the terms around it***, or when it is not in boldface or capital lettering. *See, e.g., Murray v. GMAC Mortg, Corp.*, 274 Fed. Appx. 489, 490-91 (7th Cir. 2008) (disclosure was not "conspicuous" within meaning of FCRA where it appeared on backside of solicitation flyer and occupied two of ten paragraphs all in the same size type); *Cole*, 389 F.3d at 731 (disclosure not "clear and conspicuous" where it was made in a paragraph at very bottom of flyer, printed in small font, and that was not set off from remainder of text in any way); *Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 948 (N.D. Ill. 2006) (disclosure was not "clear and conspicuous" where notice appeared in a single paragraph at the bottom of a flyer and was printed in the smallest typeface on the page).

Applying these guidelines, the above-quoted text does not comply with the "clear and conspicuous" requirement. The provisions scattered throughout multiple documents are (1) not in all capital letters, (2) not in boldface to set off the Disclosure, and (3) not reasonably understandable with multi-state information and other information included. In addition to the structural problems with a so-called disclosure, written in tiny font, and spread across multiple documents, the disclosure contains internally inconsistent language that is likely to confuse a non-lawyer. For example, the Notice says, "New York applicants or employees only: You have the right to inspect and receive a copy of any investigative consumer report requested by Employer by contacting the consumer reporting agency identified above directly."

Honorable Lois H. Goodman, U.S.M.J.
June 28, 2018
Page 10

Reading this, an average reasonable consumer could believe that *only* New York applicants are allowed to contact the consumer reporting agency to get a copy of the any investigative consumer report. These confusing additional provisions are the direct and predictable result of Defendant's effort to cut corners by shoehorning inapplicable surplusage into the disclosure. The FCRA disclosure should be a standalone document and, if desired, a bare authorization to obtain information, without being weighed down by multiple, irrelevant state law references, confusing and contradictory rights summaries, and references to side documents containing information not set forth in the attempted disclosure.

In a similar case pending in the Northern District of California involving a disclosure that that also references other state law rights, and an acknowledgment of another document (a summary of rights under FCRA), Judge Chen ruled that:

> "Defendants' argument that the Form does not violate § 1681b(b)(2)(A) is without merit. The statute does not require that some *section* be free of extraneous information additional to the disclosure. It requires that the "*document*" be free of such additional information: the *document* must 'consist[] solely of the disclosure,' except that the 'authorization may be made on the document." 15 U.S.C. § 1681b(b)(2)(A) (emphasis added). Further, "[t]he ordinary meaning of 'solely' is '[a]lone'; singly' or [e]ntirely; exclusively.'" *Syed v. M-1, LLC,* 853 F.3d 492, 500 (9th Cir. 2017) (alternations in original) (quoting *American Heritage Dictionary of the English Language 1666* (5th ed. 2011)). The statute contains an express exception to the "solely" requirement: the authorization for "the procurement of the report" (and nothing more) "may be made on the document." 15 U.S.C. § 1681b(b)(2)(A)(ii). Given this explicit singular exception, "the familiar judicial maxim *expression unius est exclusion alterius* counsels against finding additional, implied, exceptions." *Syed,* 853 F.3d at 501.

(*Poinsignon v. Imperva, Inc.*, Case No. 3:17-cv-05653-EMC, Docket 34).

Based on the above, Plaintiff respectfully request that this Court deny Defendants' request to stay discovery

Thank you for Your Honor's attention to this matter.

                Respectfully submitted,

                s/Jillian L. Szymonifka
                Jillian L. Szymonifka

JLS/jls
cc:    All Counsel of Record (via ECF)

Firmwide:155560005.1 999999.6564