**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| _____ | : | |
| JOSEPHINE E. BACCAY, on behalf of | : | |
| herself, all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 17-07779 (FLW) (LHG) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| HEARTLAND PAYMENT SYSTEMS, | : | |
| LLC, a Delaware limited liability company; | : | |
| HEARTLAND PAYMENT SOLUTIONS, | : | |
| INC., a Delaware corporation; and DOES 1 | : | |
| through 100, inclusive, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, United States District Judge:**

Pending before the Court is a motion for summary judgment from Defendants Heartland

Payment Systems ("HPS") and Heartland Payment Solutions ("Solutions") (collectively,

"Defendants"), seeking dismissal of all claims in the Complaint of Plaintiff Josephine E. Baccay

("Plaintiff"), on the basis that Plaintiff lacks standing to bring certain federal claims and that the

remaining state law claims lack sufficient factual allegations. Plaintiff's Complaint, brought as a

putative class action, includes one federal and three state causes of action related to the

employment application that Plaintiff completed before taking a job with HPS: 1) violation of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(2)(A);[1] 2) violation of the

---

[1] Plaintiff's central claim under the FCRA is that Defendant violated the statute's "disclosure
provision," 15 U.S.C. §§ 1681b(b)(2)(A). However, under the FCRA count in her Complaint,

1

Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786, *et seq.*; 3)

violation of the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785

*et seq.*; and 4) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§

17200, *et seq*. For the reasons that follow, Defendants' motion for summary judgment is granted,

in part, as Plaintiff lacks Article III standing to assert her FCRA claim, and the remaining

California state law claims lack factual support and must be dismissed. Defendant's motion is

denied insofar as it seeks dismissal of the FCRA claim, as this claim must be remanded to the

Superior Court of California, Sacramento, where Plaintiff initially brought the case.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a California citizen who worked for HPS, a limited liability company

organized and existing under the laws of Delaware, for two months in 2016 before "voluntarily

resign[ing]." Certification of Steven Rosenwasser ("Rosenwasser Cert."), Exhibit A ("Baccay

Dep.") at 80:4; Complaint at ¶¶ 4-5. Although Solutions is named as a Defendant in the

Complaint, Plaintiff concedes that HPS and Solutions are separate entities, and she never applied

for a position with nor worked for Solutions.[2] Defendants' Statement of Material Facts Not in

Dispute ("DSOF") at ¶ 4.

---

Plaintiff also includes an allegation that Defendants violated the FCRA "summary of rights" provision, by having a policy of failing to provide applicants and employees a "summary of the consumer's rights," as is required by the statute, 15 U.S.C.A. § 1681b(b)(1)(B), and, further, without any factual basis that this policy was applied to Plaintiff. This allegation as to Plaintiff is devoid of any facts, and indeed, Plaintiff concedes that HPS did provide her with a summary of rights form. Plaintiff's Response to Statement of Material Facts Not in Dispute ("PRSOF") at 6-7. Furthermore, as discussed in *infra* part III.B., the summary of rights allegations appear to be just one instance of Plaintiff's counsel cutting and pasting language from unrelated FCRA actions in which they also serve as counsel. Thus, I will use my considerable discretion under Federal Rule of Civil Procedure 12(f) to *sua sponte* strike the allegations in the Complaint discussing a summary of rights claim under the FCRA. *See Dotterer v. Pinto*, No. 13-06903, 2014 WL 535156, at *5 n.1 (E.D. Pa. Feb. 11, 2014).
[2] Solutions is, therefore, also dismissed as a Defendant in this action.

Plaintiff's case hinges on a form that was part of her employment application package that allegedly contained extraneous language in violation of both the FCRA and ICRAA. HPS uses an on-line application process, in which a document is presented to an applicant, he or she signs it, and then the next document is presented. *Id.* at ¶ 16. When Plaintiff applied for the job with HPS on September 24, 2016, HPS presented her with a "Notice Regarding Background Investigation" (the "Disclosure Form"). *Id.* at ¶ 13. The Disclosure Form stated:

> [HPS] may obtain information about you from a consumer reporting agency for employment purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews with employers and or associates.

Rosenwasser Cert., Ex. J at 1.

According to Plaintiff, certain release language in the employment application violated the FCRA's prohibition on extraneous language. However, although Plaintiff points to the fact that a separate employment application form contained the release language, there is no dispute that the Disclosure Form itself contained no such language, and Plaintiff confirmed that she "received and signed [the Disclosure Form] separately from the employment application." Baccay Dep. at 98:1-4. Nonetheless, Plaintiff seems to suggest that the separate employment application form containing the release language should be considered in conjunction with the Disclosure Form. PRSOF at 9.

In her deposition, Plaintiff repeatedly testified that the Disclosure Form did not cause her confusion, and that she understood the implications of the document she was signing:

> Q: And when you received and signed [the Disclosure Form], you understood that Heartland Payment Systems was going to conduct or cause someone else to conduct a background check on you. Correct?
>
> A: Yes.
>
> Q: And you understood that the background check could include checking your employment history, education, driving record, and criminal history. Correct?

A: Yes.

Baccay Dep. at 98:5-16. Plaintiff further testified that she was comfortable agreeing to provide

personal information for the purposes of a background check:

> Q. So, for example, it's reasonable for Heartland Payment Systems to want to get background information about its employees' education, work history, criminal history, and driving record. Correct?
>
> A. Yes.
>
> Q. And you don't have any problem providing that information, do you?
>
> A. No.
>
> Q. And, in fact, you authorized Heartland to obtain that information, didn't you?
>
> A. Yes.
>
> Q. And you don't have any claim, sitting here today, that Heartland Payment Systems should not have conducted a background check, do you?
>
> A. No.

*Id.* at 77:22-78:12. Moreover, any extraneous material contained in the Disclosure Form did not

affect Plaintiff's decision to authorize HPS to conduct a background check, as she confirmed, in

her deposition, that, "no matter what [the Disclosure Form] said, [she was] going to sign this

document because [she] wanted a job." *Id.* at 103:3-6.

Plaintiff also asserts various claims that, based on discovery, appear to have no factual

support at all. First, Plaintiff asserts that Defendant violated the FCRA by failing to include a

"summary of rights" in the Disclosure Form. However, the Disclosure Form includes a sentence

that states, "You have the right, upon written request made within a reasonable time after receipt

of this notice, to request disclosure of the nature and scope of any investigative consumer report

and a Summary of Your Rights Under the Fair Credit Reporting Act," DSOF at ¶ 14, and HPS,

in fact, presented Plaintiff with the "summary of rights" document. *Id.* at ¶ 15. Second, Plaintiff

also asserts a claim under the CCRAA premised on the unauthorized disclosure of information to

a credit reporting agency, but it is undisputed that HPS never obtained a credit report on Plaintiff.

*Id.* at ¶ 10. Third, the Complaint asserts claims based on a "Reference Release Form" and "Driving Record Authorization Form," but Plaintiff concedes that Defendants never provided her with these forms. *Id.* at ¶¶ 11-12.

Plaintiff initially brought this suit as a putative class action on May 22, 2017, in the Superior Court of California, Sacramento, asserting one cause of action each under the FCRA, ICRAA, CCRAA and UCL. On July 3, 2017, Defendants removed the case to the United States District Court for the Eastern District of California based on federal question jurisdiction and the Class Action Fairness Act ("CAFA"). On July 17, 2017, Defendants moved to change venue pursuant to the parties' Sales Employee Agreement, which contained a forum-selection clause designating the U.S. District Court for the District of New Jersey as the exclusive forum for the suit. On October 2, 2017, this motion was granted, and the case was transferred to this Court.[3] Following a pretrial scheduling conference on May 9, 2018, Defendants filed the present summary judgment motion.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over irrelevant or

---

[3] As the parties apparently failed to raise the issue of whether remand to California state court was appropriate while the case was in the Eastern District of California, I must deal with that issue now.

unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson,* 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson,* plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992).

## III. DISCUSSION

Defendants first move for summary judgment on the ground that Plaintiff lacks standing to bring her stand-alone disclosure claims. As standing is jurisdictional in nature, I turn to this argument first before moving to Plaintiff's remaining state law claims.

### A. Article III Standing

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of standing. Fed. R. Civ. P. 12(b)(1); *see also Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Indeed, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original).

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir.

2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (footnote omitted).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is '*de facto*'; that is, it must actually exist"—it cannot be merely "abstract." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548). Moreover, a harm need not be tangible, to be "concrete." To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, consideration should focus on whether the purported injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citation omitted). In that connection, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration original).

Importantly, in the context of a statutory violation, allegations of a "bare procedural violation [under the statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated

differently, not every "bare" violation of a right granted by a statute is inherently injurious.

Rather, such a violation must result in a "concrete" harm. That requirement remains in

circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory

procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress

cannot erase Article III's standing requirements by statutorily granting the right to sue to a

plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a

right is substantive or merely procedural. A "procedural right" is defined as "[a] right that

derives from legal or administrative procedure; a right that helps in the protection or enforcement

of a substantive right." *In re Michaels Stores, Inc.*, No. 14-7563, 2017 WL 354023, at *7 n.12

(D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enterprises, LLC*, 214 F. Supp. 3d 566,

571 (S.D. Tex. 2016)) (internal citations omitted) (alteration original). On the other hand, a

"substantive right" is "[a] right that can be protected or enforced by law; a right of substance

rather than form." *Id.* (citing *Landrum*, 214 F. Supp. 3d at 571) (internal citations omitted)

(alteration original). "To the extent that a violation of the procedural right has no effect on the

substantive right, the bare procedural violation does not cause an injury of the sort that, alone,

would support standing."[4] *Id.* (citing *Landrum*, 214 F. Supp. 3d at 571).

---

[4] In *Landrum*, the court provided an example to clarify the sometimes-confusing difference
between a procedural and substantive violation:

> Consider a hypothetical statute requiring building managers to notify occupants in
> the event of a fire in a timely manner via a loudspeaker using specific language.
> Now imagine that, during a fire, a manager effectively communicates a warning to
> an occupant in a timely manner but does so in person, after which the occupant
> escapes unharmed. The occupant was subjected to a bare, procedural violation. If,
> however, another occupant was never warned but smelled smoke and safely exited
> the building, the latter occupant was subject to a substantive violation of his right
> to be timely notified, albeit without independent, "tangible" harm. In the latter case,

1. <u>Standing in Stand-Alone Disclosure Cases</u>

Here, Plaintiff seeks to establish that she has standing to assert her stand-alone disclosure

claims under the FCRA. The FCRA's disclosure provision requires that the employer's intent to

obtain a background check be disclosed conspicuously, in a dedicated, stand-alone document:

> [A]n employer or prospective employer cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing ... the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

The sole allegation in Defendant's stand-alone disclosure claim is that the alleged

inclusion of release language in the Disclosure Form violated the requirement that such a

document "consist solely of the disclosure" of the intent to obtain a background check. Thus,

Plaintiff has alleged a violation of one of the "purely formal requirements of FCRA," as she does

"not factually allege any harm aside from the statutory violation itself." *Michaels*, 2017 WL

354023, at *5. That violation is, by itself, a procedural violation, so Plaintiff must identify a

"substantive right" on which the alleged procedural violation infringed. *Id.* (citing *Landrum*, 214

F. Supp. 3d at 571). Post *Spokeo*, courts have generally found that § 1681b(b)(2)(A) creates two

such substantive rights that could potentially give rise to standing: (1) a right to specific

information in the form of a clear and conspicuous disclosure; and (2) a right to privacy in one's

---

> a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (*i.e.*, the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

*Landrum*, 214 F. Supp. 3d at 571.

consumer report. *Meza v. Verizon Commc'ns, Inc*., No. 16-0739, 2016 WL 4721475, at \*3 (E.D.

Cal. Sept. 9, 2016) (citing *Thomas v. FTS USA, LLC*, 2016 WL 3653883 (E.D. Va. June 30,

2016)). A procedural violation of the FCRA's disclosure provision does not automatically

implicate these substantive rights, however. The issue is not whether "technical or procedural

requirements *may* cause concrete harm, [but] whether the violation *has* caused such harm," an

analysis that is "situation-dependent." *Michaels,* 2017 WL 354023 at \*7 (emphasis in original).

Thus, I must determine, based on the particular facts of the case, whether Defendants' alleged

violation of the disclosure provision caused Plaintiff either informational or privacy-related

harms. For the following reasons, I answer these questions in the negative.

2.   Informational Injury or Invasion of Privacy

The Supreme Court has held that "a plaintiff suffers an 'injury in fact' when the plaintiff

fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election*

*Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (citing *Public Citizen v. Department of Justice*, 491

U.S. 440, 449 (1989)). *Spokeo*, citing *Akins* and *Public Citizen*, reaffirmed this

principle. *Nickelodeon*, 827 F.3d at 273–74 ("[U]nlawful denial of access to information

[statutorily] subject to disclosure" alone sufficiently constitutes injury-in-fact to confer Article

III standing.) (citing *Spokeo*, 136 S. Ct. at 1549–50).  Thus, in the context of a claim alleging

violations of the FCRA disclosure requirement, a plaintiff can establish standing by showing that

a disclosure form containing extraneous information actually deprived a plaintiff of the

information that an employer sought to obtain a consumer report on the potential employee.

Here, Plaintiff's assertion of informational injuries fails because she has not established

that the extraneous language, allegedly contained in the Disclosure Form, caused any actual

confusion about whether her personal information would be made available for a background

check. In fact, the undisputed evidence, including Plaintiff's own testimony in her deposition,

11

demonstrates exactly the opposite: Plaintiff testified explicitly that she understood that the

Disclosure Form contained language regarding a "background check [that] could include

checking your employment history, education, driving record, and criminal history," saw nothing

wrong with such a background check, and, in, fact, explicitly *authorized* it. *See* Baccay Dep. at

78:6-8 ("Q: And, in fact, you authorized Heartland to obtain that information, didn't you? A.

Yes.). Plaintiff, thus, has no basis to assert that she suffered a concrete informational injury.

In *Michaels*, a court in this district reached the same conclusion in nearly identical

circumstances. There, a group of plaintiffs, applicants for employment at defendant Michaels

Stores, alleged that the the defendant's disclosure of its intent to obtain a consumer report for

employment purposes appeared in the middle of the job application and not in a stand-alone

document, thereby violating the FCRA disclosure requirement. *Michaels*, 2017 WL 354023, at

*6. Plaintiffs did not allege, however, that they had not seen the disclosure, or that the other

language in the disclosure form had distracted them from it. *Id.* Relying on *Spokeo,* the court

found that the "disclosure requirements set forth in § 1681b(b)(2)(A)(i) are substantive rather

than procedural," and that it "[could not] hold, post-*Spokeo*, that [defendant's] nonconformance

to disclosure formatting specifications constitutes an 'informational injury' sufficient to confer

standing." *Id.* at *7.  Accepting such an argument, the court reasoned, would "virtually erase[ ]

the distinction between a merely procedural violation and a substantive injury-in-fact." *Id.*  Thus,

plaintiffs, like Baccay, who "do not allege that they did not see the disclosure, or were distracted

from it," have not suffered an informational injury sufficient to confer standing. *Id* at *6.[5]

---

[5] Plaintiff argues that Congressional intent supports finding standing for violations of the disclosure requirement. This argument is unavailing. "The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure." *Michaels*, 2017 WL 354023, at *9 (citing

Along the same lines, Defendants' purported procedural violation has not infringed Plaintiff's privacy rights. An invasion of consumers' privacy was among the harms that Congress identified and sought to prevent by passing the FCRA. The Third Circuit recognizes that "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Nickelodeon*, 827 F.3d 262 at 274 (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 & n.19 (3d Cir. 2015)). *See also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 (3d Cir. 2017). Here, there can be no invasion of privacy, however, because, as discussed, Plaintiff explicitly authorized the disclosure of her information. *See Michaels*, 2017 WL 354023, at *10 ("Everyone agrees that an applicant would have standing under the FCRA if the employer simply obtained a credit report without telling the applicant, and without the applicant's consent. On the other hand, the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation....).

Indeed, like *Michaels*, the vast majority of courts that have dealt with claims alleging bare violations of the FCRA's stand-alone disclosure provision, have found no informational injury and/or invasion of privacy violation in similar circumstances. These cases include: *Groshek v. Time Warner Cable*, 865 F.3d 884 (7th Cir. 2017); *Cooper v. Academy Mortg. Corp. (UT)*, 2017 WL 8186733 (N.D. Ga. Nov. 27, 2017); *Mitchell v. Winco Foods, LLC*, No. 16-00076-, 2017 WL 5349539 (D. Idaho Nov. 13, 2017)*, vacated on other grounds*, 743 F. App'x 889 (9th Cir. 2018); *Stacy v. Dollar Tree Stores, Inc.*, 274 F.Supp. 3d 1355 (S.D. Fla. 2017); *Bercut v. Michaels Stores, Inc.*, 2017 WL 2807515 (N.D. Cal. June 29, 2017); *Dyson v. Sky*

---

Federal Trade Commission ("FTC") opinion letter)). Where, as here, "plaintiffs do not allege that they did not see the disclosure, or were distracted from it, the allegations amount to no more than a bare procedural violation of the stand-alone requirement." *Id.*

*Chefs, Inc.*, 2017 WL 2618946 (N.D. Tex. June 16, 2017); *Campbell v. Adecco USA, Inc.*, 2017 WL 1476152 (W.D. Mo. Apr. 24, 2017); *Long v. Se. Pa. Transp. Auth.*, No. 16-1991, 2017 WL 1332716, at *1 (E.D. Pa. Apr. 5, 2017), *rev'd on other grounds,* 903 F.3d 312 (3d Cir. 2018); *LaFollette v. RoBal, Inc.*, 2017 WL 1174020 (N.D. Ga. Mar. 30, 2017); *Vera v. Mondelez Global LLC*, 2017 WL 1036509 (N.D. Ill. Mar. 17, 2017); *Fields v. Beverly Health & Rehab. Servs.*, 2017 WL 812104 (D. Minn. Mar. 1, 2017); *LeGrand v. Intellicorp Records, Inc.*, 2017 WL 733664 (N.D. Ohio Feb. 24, 2017); *Marchioli v. Pre-Employ.com, Inc.*, 2017 WL 2130294 (C.D. Cal. Jan. 25, 2017); *Tyus v. USPS,* 2017 WL 52609 (E.D. Wis. Jan. 4, 2017); *Lee v. Hertz Corp.*, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016); *Landrum v. Blackbird Enters.*, 214 F. Supp.3d 566 (S.D. Tex. 2016); *Kirchner v. First Advantage Background Servs. Corp.*, 2016 WL 6766944 (E.D. Cal. Nov. 14, 2016); *Shoots v. iQor Holdings US Inc.*, 2016 WL 6090723 (D. Minn. Oct. 18, 2016); *Nokchan v. Lyft, Inc.*, 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016); *Fisher v. Enterprise Holdings, Inc.*, 2016 WL 4665899 (E.D. Mo. Sept. 7, 2016).

In contrast, the few FCRA cases dealing with stand-alone disclosures reaching the opposite result are either distinguishable from the present case or unpersuasive. For instance, in *Thomas v. FTS USA, LLC*, No. 13-825, 2016 WL 3653878 (E.D. Va. June 30, 2016), the district court found that a plaintiff alleging that the defendant's disclosure of its intent to obtain a consumer report had standing to bring a FCRA claim. Diverging from *Michaels*, the court found that "the rights created by § 1681b(b)(2) are substantive rights, and the breach of the statute is not a 'bare procedural violation' of a technical requirement" and, thus, even a technical violation could confer standing. *Id.* at *11. I follow *Michaels* in rejecting this interpretation because "[t]hat the disclosure at issue be contained in a separate document…does not correspond to any right traditionally recognized at law," nor is there "any indication that Congress, in requiring [that

disclosure be in a separate document], was elevating it to a substantive right." *Michaels*, 2017

WL 354023, at *7. If correct, *Thomas* would have far-reaching implications: "if a disclosure that

flunks the stand-alone test automatically 'counts as a concrete informational injury, then it is

hard to imagine a statutory violation that would not cause some form of informational injury.'"

*Id.* (quoting *Groshek*, 2016 WL 6819697, at *2); *see also Dyson*, 2017 WL 2618946, at *7

("[T]he Court respectfully declines to [find standing] and joins a number of courts disagreeing

with *Thomas*); *Hopkins*, 2016 WL 6462095, at *3 ("respectfully disagree[ing] with the

conclusions in *Thomas*").

        Also unpersuasive is Plaintiff's reliance on *Syed v. M-I,* LLC, 853 F.3d 492 (9th Cir.

2017), which Plaintiff contends is directly analogous to the present case and dictates that any

prospective employee who receives a disclosure form violating the FCRA disclosure requirement

has standing to bring an FCRA claim. Plaintiff misconstrues the *Syed* decision, however, as

neither its facts nor legal reasoning are applicable here. There, the plaintiff alleged that it took

him two years to discover that his employer had procured a credit check, and that "allegation

[was] sufficient to infer that [he] was deprived of the right to information and the right to

privacy" because "it indicate[d] that [he] was not aware that he was signing a waiver authorizing

the credit check when he signed it" and "was confused by the inclusion of [a] liability waiver

with the disclosure and would not have signed it had it contained a sufficiently clear disclosure."

*Id.* at 499-500. Thus, the plaintiff in *Syed* suffered a concrete informational injury because he

was actually deprived of notice. However, here, Plaintiff cannot make any such claim: as already

discussed, despite any alleged technical violation of the FCRA's requirements, she understood

that HPS would obtain a consumer report. *See Groshek*, 865 F.3d at 889 ("*Syed* is inapposite.

The Ninth Circuit had factual allegations from which it could infer harm, whereas Groshek

alleges none. Unlike the plaintiff in *Syed*, Groshek presents no factual allegations plausibly

suggesting that he was confused by the disclosure form or the form's inclusion of a liability

release, or that he would not have signed it had the disclosure complied with 15 U.S.C. §

1681b(b)(2)(A)(i)."); *Stacy*, 274 F.Supp. 3d at 1363, at \*7 (distinguishing *Syed* on same basis);

*Bercut*, 2017 WL 2807515, at \*5 (same); *Mitchell*, 2017 WL 5349539, at \*2 ("The Ninth Circuit

in *Syed* did not create a change in the controlling law on standing set forth in *Spokeo*").

Thus, Plaintiff does not have standing to assert her stand-alone disclosure claim under the

FCRA.

### B. Plaintiff's Remaining State Law Claims

In addition to the FCRA claim, Plaintiff also brings a litany of state law claims that have

no factual basis at all. Indeed, according to Defendants, Plaintiff's counsel appear to have cut-

and-pasted into the Complaint numerous allegations from other cases in which they appear as

counsel, despite those cases having nothing to do with this case. In an apparent recognition of

their obvious carelessness, Plaintiff offers to withdraw these claims were the Court to find that

Plaintiff has standing to assert her stand-alone disclosure claims. Alternatively, anticipating that

the Court might find that no standing exists over the FCRA claim, Plaintiff argues that the entire

case should be remanded to state court, rather than dismissed. The entire case need not be

remanded, however, as Plaintiff does not contest Defendant's CAFA basis for removal of these

state law claims, so subject matter jurisdiction over these claims exists. *See Brahamsha v.*

*Supercell OY*, No. 16-8440, 2017 WL 3037382, at \*6 (D.N.J. July 17, 2017) (citing *Dart*

*Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014)) ("Plaintiff does not

contest Defendant's CAFA basis for removal, so the Court accepts Defendant's allegations as

true, without the need for evidentiary support.").

First, Plaintiff's ICRAA claim is substantively the same as her FCRA claim for violation

of Section 1681b(b)(2)(A). As she did in her FCRA claim, Plaintiff alleges that Defendants

violated Section 1786.16(a)(2) of the ICRAA by including extraneous information in its

Disclosure Form. Section 1786.16(a)(2) of the ICRAA provides in relevant part:

> If, at any time, an investigative consumer report is sought for employment purposes
> other than suspicion of wrongdoing or misconduct by the subject of the
> investigation, the person seeking the investigative consumer report may procure the
> report, or cause the report to be made, only if all of the following apply: .... (B) The
> person procuring or causing the report to be made provides a clear and conspicuous
> disclosure in writing to the consumer at any time before the report is procured or
> caused to be made in a document that consists solely of the disclosure ....

Cal. Civ. Code § 1786.16(a)(2). I find Plaintiff's claim to be meritless (as I would for Plaintiff's

FCRA claim if I had jurisdiction to reach the merits), as it is undisputed that any allegedly

extraneous release language was located not in the Disclosure Form, but in a different document

that Plaintiff reviewed and signed separately. The statute is clear that only the document

containing the disclosure must be free from extraneous language, and Plaintiff cites no authority

suggesting otherwise. Thus, Plaintiff's ICRAA claim is dismissed.[6]

Plaintiff also asserts a claim under Section 1785.25(a) of the CCRAA, which provides:

"A person shall not furnish information on a specific transaction or experience to *any consumer*

*credit reporting agency* if the person knows or should know the information is incomplete or

inaccurate." Cal. Civ. Code § 1785.25(a) (emphasis added). As the statute makes clear, a

CCRAA claim involves the furnishing of personal information to a credit reporting agency. But

here, Plaintiff only alleges that Defendants provided her information to a consumer reporting

---

[6] The ICRAA count also includes reference to "Reference Release Form" and a "Driving Record
Authorization Form." Plaintiff agrees that these two forms were "inadvertently" referenced in the
complaint, ECF No. 41 at 33, so insofar as Plaintiff asserts separate ICRAA claims premised on
these forms, they are also dismissed.

agency to perform a background check, and not to a credit reporting agency to perform a credit check, and does not allege it was done to report any particular transaction, or that it was inaccurate. This claim, therefore, must also be dismissed.

Plaintiff also brings a claim under the UCL, which requires that a plaintiff have "lost money or property as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, but Plaintiff concedes that she never lost money or property. Dismissal of this claim is, therefore, also warranted.

In sum, as Plaintiff fails to assert even colorable arguments in support of her state law claims, they all must be dismissed.

## C. Remand or Dismissal

Although Plaintiff's state law claims are dismissed, I must decide whether to remand or dismiss the FCRA claim, which, as discussed in part III.A *supra*, Plaintiff lacks standing to bring. Where a defendant removes a claim from state court based on a federal question, but Article III standing (and, thus, subject matter jurisdiction) is lacking, the proper recourse is remand rather than dismissal, pursuant to 28 U.S.C. § 1447(c). *See Katz v. Six Flags Great Adventure, LLC,* No. 18-116, 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018*)* (internal citations omitted). *See also Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, it *must* remand and not dismiss on the ground of futility.") (emphasis added); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 540 (3d Cir. 1994) ("[A] determination that there is no standing 'does not extinguish a removed state court case.' Rather, federal law 'only requires ... remand ... to state court.'") (citations omitted). There is some dispute over whether the automatic remand requirement of Section 1447(c) only applies when remand would involve the remand of an entire case, not a single count within a properly removed, multi-count case. *Compare Legrand v. Intellicorp*

18

*Records, Inc.*, No. 15-2091, 2017 WL 2313865, at \*2 (N.D. Ohio May 26, 2017) *with*

*Easley v. Reserves Network, Inc.,* No. 16-544 (N.D. Ohio, March 17, 2017). However, as the

Court has dismissed Plaintiff's state law claims, the entire case now consists of only Plaintiff's

FCRA claims. Thus, as Article III standing is lacking and this Court lacks subject matter

jurisdiction over Plaintiff's FCRA claim, this claim is remanded.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement is **GRANTED**,

in part, and **DENIED**, in part. Plaintiff's Counts II (ICRAA), III (CCRAA), and IV (UCF) are

**DISMISSED**, and Plaintiff's Count I (FCRA) is **REMANDED** to the Superior Court of

California, Sacramento.


Dated: January 28, 2019                    /s/ Freda L. Wolfson
                                          Hon. Freda L. Wolfson
                                          United States District Judge

---

[7] The case must be remanded to the Superior Court of California, Sacramento, rather than New Jersey state court, as "[t]he only remand contemplated by the removal statute is a remand 'to the State court from which it was removed.'" *Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) (quoting 28 U.S.C. § 1447(d)).